Judge Wood
delivered the opinion of the court:
It is made a question for the defense, whether the proper party defendants are before the court. The objection lies at the foundation of the suit, and for that reason should be first examined and disposed of. If it is well taken, we can not proceed to a decree. Other parties must be brought before us, and we ought to hear them before we decide a principle affecting their rights. This is the more necessary, because we are engaged in re-examining a doctrine that has been settled in this court, and promulgaged as a rule of property. In such a case we are required to proceed with circumspection as well as with deliberation. Possibly new parties may present new views, and if a final decree can not be pronounced without bringing such parties into court, they should be so brought in, and opportunity given them to be heard before any step is taken by which their rights may be compromitted.
The lot of ground, of which dower is sought by this petition, *470 is scpai-ated from a much larger entire tract, which was owned and aliened by the husband in its entirety. In addition to this, that tract is but one of seven separate tracts thus owned, and all aliened at the same time and by the same conveyance.
The statutory provision giving the remedy in chancery directs that the widow may file her petition against “the heir or other person having the next immediate estate of inheritance.” It also empowers the court 11 to render such decree in the premises as shall appear just and consistent with the rights of all the parties interested therein.” The same statute empowers the court to assign the dower in the-whole of several tracts in any one of them, “ if the same can be done without prejudice to the rights of any person claiming title to, or holding a lien on .such lands.”
The obvious intent of these enactments is to clothe the court with discretionary powers to simplify and expedite the assignment of dower in proper cases. A leading case of this class is, where the next immediate estate of inheritance, in several tracts of land, descends to the heir, between whom and the claimant of dower there is no third party interest. Here the parties in interest and the subjects to be litigated are, in every point, identical. There is great convenience in comprehending all their rights in a single suit. This not only tends to .narrow *neeessary litigation, it enables the court, very often, to do more exact equity between the parties. The same may be alleged of the single alienee of several tracts of land, who still retains title and possession. The statute embraces these and similar appropriate cases, enlarging the discretionary power of the courts for boneficient purposes. But it never was intended to coerce a joinder of' parties, having no privity of estate, no necessary legal connection, and whose interests might be adverse. The inconveniences, nay, the impracticabilities of such a joinder of parties, are familiar to the profession and to the court. Rules of practice have been carefully constructed to prevent these, and we can not agree that their subversion was intended by our statute. Where the heir, or the alienee of the husband has subdivided, and again aliened the estate into separate parcels, the incumbrance of dower follows separately, attaching to each separate subdivision its claim, not proportionate to the whole, but equal to its value in the particular case. Hence we are of opinion that, in this case, the proper parties are before the court.
*471 The second question, in what seems to the court the appropriate order for considering, the points in the case is, can the widow claim to be endowed of lands lying wild and uncleared of timber during the husband’s seizin, and at the time of his alienation? This question is raised upon a technical' nicety of the common law. Ono of the incidents attached to a dower estate is its forfeiture for waste, and a prominent act of waste is converting ■woodland into arable.
Thus, it is argiied, dower in wild lands is a'useless property. It can be'of no value to the widow in its wild state, and it can not he reduced to cultivation without forfeiting the estate itself.
This argument is too subtle to be received as premises for the conclusion it seeks to enforce. The common law doctrine of waste has never been recognized in Ohio, either as an incident of title or as affording a remedy for wrong.
With us, as is justly arguod for the petitioner, dower is of statutory creation. It was introduced by our fundamental law, not in the technical, legal phraseology of the old books, but with very little reverence, instead, for cither Littleton or Coke, or even Glanville. And it is declared to be of “all lands of which the husband was seized, as an estate of inheritance, at any term during the coverture.” This is an enactment of the state ^government in the year 1805. Under this statute, dower, in this case, has its origin; for we hold that the widow’s right accrued at the death of the husband. The members of this legislature knew the condition of the country; that it existed mostly in wild lands', and they employed the broadest and most comprehensive language to subject “all" these lands to the right vested in the widow. Had the waste notion now set up been previously acted upon, it might well be maintained that this statute was worded purposely to introduce a new rule. It is the opinion of the court that wild, uncultivated-lands have always been subject to dower in Ohio.
These points, however, are but the outworks of the defendant’s case. The great matter in contest is the period of fixing the value and the rule lor ascertaining the amount. Alter many litigations, adjudged upon conflicting principles, both these points were solemnly settled in this court, and the result ordered to be authentically published, for the information of the citizens, in Dunseth v. Bank of the United States, 6 Ohio, 76. We have reheard that case in this, and a majority of the court found themselves satisfied *472 with it. A further hearing was asked and conceded. We have listened patiently to ever}*- new suggestion, and have reconsidered previous arguments. The result is, that a majority of the court is confirmed in the right decision of the Dunseth case.
The counsel have thoroughly searched the whole subject, and placed it clearly before us. It appears that different rules, in respect to dower, have been adopted in different states. That in some it has been hardly agitated, and, in others, very earnestly discussed. In consequence of this, we have felt at liberty to decide upon a rule for our selves.
Before the decision in Dunseth v. Bank of the United States, several cases had been prosecuted in Hamilton county. The record statements of some of these cases are presented, as part of the printed arguments for the defendant. Considered in the light we look at them, these cases seem to explain how the rule in Dunseth’s case came to be established.
It wa s about 1822 that the first cases were heard in. the Supreme Court of Hamilton county. It is evident from the transcripts that dower was discouraged by the bar, the bench, and the mass of those engaged in the administration of justice. It conld not be otherwise, where there would be many claims of dower, for the widows of the pioneers, whose lots of ground *bad been passed away, for little considerations, and in great negligence with respect to properly executed conveyances.
The rule declared by the court was, the value at the time of the husband’s alienation. The findings and judgments under this rule were not well calculated to keep it in countenance. Thus, in the case of Ewing v. Ennis, referred to twelve jurors, their verdict was, that, at the alienation in 1801, the dower interest was worth nothing; but at the husband’s decease, in 1818, it was of the value of $45 per annum. The widow, under the rule, recovered nothing for her dower. There was too evident injustice in this, and a strenuous effort was made not to allow an extension of the rule beyond the value at the time of the husband’s decease. This prevailed for a few cases, but the profession were not satisfied with it. The struggle for value at the time of the demand continued until the whole subject was brought before us in the Dunseth case, in 1833. The decision then made is far from being acceptable to all.
It is a beautiful theme for declamation, but that is out of our province. Much may be said for the widow, and something for *473 the purchaser in possession. Generally, there is a gentleman go-between, who speculates, at last, upon both, or loses his prey altogether. But the correct rule can look at none of these.
The dower interest of the wife, in all the lands owned by the husband during the coverture, is not of a character to be sprung upon any purchaser or party in possession. The law has taken care to give it a public character, and has provided a mode for its relinquishment. Every purchaser who carefully traces his title, and obtains information of the chain of grantors, under whom he claims, is enabled to ascertain if a dower incumbrance stand out against him. If he delay to extinguish it, the fault is his own. It is no impeachment of the rules of law, or the developments of time and circumstances, if they work together to make his negligence result in a hard case upon his pocket. The case before us is appropriate for explanatory use.
The lands were wild in a wilderness. The widow claimant lived in a far remote country, ignorant of all her rights. When she became acquainted with those rights, it could not be more her duty to demand them, than it was the duty of the party in possession to hasten an adjustment. Can he complain, if, calculatingly, she waited for a great anticipated rise of property, before she fixed her right of amount by a demand? The party in possession can cause assignment of dower. The widow can delay, or hasten *her demand by the appropriate suit. We give the preference to the widow, when both parties have remained inactive.
We lay out of the case the learning, quaint and almost incomprehensible as much of it is, which is displayed in the cases and dogmas cited for the defendant. The citing the heir or warrantor that the covenant of warranty may be tried, and the damages recoverable ascertained, as the rule of value for the dower maybe specified. Whilst the court were building up the nothing value, in dower, they were adjudging most scorching damages upon covenants of seizin. This matter was set right in 1827, in the cases of Backus’ Adm’r v. McCoy, and Robinson v. Neil, 3 Ohio, 218, 525. And in 1833, Dunseth against the Bank, introduced the rule in dower, to which the majority of the court have determined to adhere.
It is considered that the statute laws of Ohio,«from the provision in the ordinance, and running through every enactment to *474 this day, contemplated dower as a plain unentanglod interest of the wife in the real estate of the husband. The remedy given to obtain it, when refused, is made simple and direct. It is all an honest, homespun concern of our own, standing distinct from precedents and' analogies of other countries, and upon a basis sufficient to sustain it.